ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| NATANAEL OLMEDA PÉREZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400105 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>Q-632-23<br><br>Sobre:<br>Expediente de visita |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de abril de 2024.

Comparece por derecho propio el Sr. Natanael Olmeda Pérez (en adelante, Sr. Olmeda Pérez o recurrente) y nos solicita la revisión de la *Respuesta al Miembro de la Población Correccional* emitida el 26 de diciembre de 2023 y notificada el 11 de enero de 2024 por la Oficina de Remedios Administrativos del Departamento de Corrección y Rehabilitación. Mediante esta determinación, se denegó la *Solicitud de Remedio Administrativo* Núm. Q-632-23 presentada el 5 de diciembre de 2023 por el Sr. Olmeda Pérez.

Por los fundamentos que expondremos, se revoca la determinación recurrida y se devuelve el caso a la agencia administrativa.

**I**

El 5 de diciembre de 2023, el Sr. Olmeda Pérez presentó la *Solicitud de Remedio Administrativo* Núm. Q-632-23 ante la Oficina de Remedios Administrativos del Departamento de Corrección y Rehabilitación.[1] En síntesis, el Sr. Olmeda Pérez solicitó que se

---

[1] Apéndice del *Escrito en Cumplimiento de Orden*, pág. 3.

Número Identificador

SEN2024 _____

incluyera nuevamente a sus padres y la madre de su hija a la lista de visitantes autorizados de su expediente de visita. Alegó que estos habían sido removidos de la lista sin que se llevara a cabo un proceso en su contra o la de ellos en violación al derecho a un debido proceso ley.

El 15 de diciembre de 2023, la Sra. Carmen Montañez Martínez, Evaluadora de la Oficina de Remedios Administrativos del Departamento de Corrección y Rehabilitación, notificó a la Sra. Enid Rosado, Supervisora de la Unidad Socio-penal, con copia de la solicitud del Sr. Olmeda Pérez.[2]

El 19 de diciembre de 2023, la Sra. Enid Rosado emitió una *Respuesta del Área Concernida/Superintendente* dirigida a la Sra. Carmen Montañez Martínez, en la cual dispuso lo siguiente:

> "Su caso fue discutido, la determinación de Cancelación permanente de los familiares que usted menciona fue final y firme por la Oficina de Programas y Servicios."

El 26 de diciembre de 2023, notificada al Sr. Olmeda Pérez el 11 de enero de 2024, la Sra. Carmen Montañez Martínez emitió la *Respuesta al Miembro de la Población Correccional* de la cual se recurre mediante el presente recurso de revisión. En esta, la Sra. Carmen Montañez Martínez se limitó a incluir copia de la determinación emitida por la Sra. Enid Rosado.[3]

El 12 de enero de 2024, el Sr. Olmeda Pérez presentó una *Solicitud de Remedio Administrativo*, mediante la cual solicitó reconsideración de la determinación emitida por la Evaluadora de la Oficina de Remedios Administrativos.[4]

El 7 de febrero de 2024, la Oficina de Remedios Administrativos emitió una *Respuesta de Reconsideración al Miembro de la Población Correccional*, mediante la cual denegó la

---

[2] Apéndice del *Escrito en Cumplimiento de Orden,* págs. 4-5.
[3] Apéndice del *Escrito en Cumplimiento de Orden,* págs. 7-8.
[4] Apéndice del *Escrito en Cumplimiento de Orden,* págs. 9-14.

solicitud de reconsideración presentada por el Sr. Olmeda Pérez.[5]

En su dictamen, la agencia dispuso lo siguiente:

> "Sr. Olmeda, de su expediente social se desprende que para el 29 de marzo de 2021 le fue cancelada permanentemente la visita de la Sra. Mariluz Pérez Álvarez (madre), Sr. Carmelo Olmeda Viruet (padre) y Sra. Paola Nicole Alicea Escalera (pareja) por situación surgida el 15 de mayo de 2020. Esta determinación es final y firme. En su expediente de visita tiene una lista de nueve (9) personas adicionales que autorizó para visitarle. De tener alguna duda puede solicitar entrevista al Área Sociopenal".

Inconforme, el Sr. Olmeda Pérez acudió ante nos el 15 de febrero de 2024 mediante el presente recurso de *Revisión*, en el cual solicita la revisión de la *Respuesta al Miembro de la Población Correccional* emitida el 26 de diciembre de 2023 y notificada el 11 de enero de 2024 por la Oficina de Remedios Administrativos del Departamento de Corrección y Rehabilitación.

El 12 de marzo de 2024, emitimos *Resolución* concediéndole un término a la Oficina del Procurador General para exponer su posición con respecto al recurso presentado por el Sr. Olmeda Pérez.

El 12 de abril de 2024, el Procurador General presentó un *Escrito en Cumplimiento de Orden.*

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable. *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. A.R.Pe.*, 172 DPR 254, 264 (2007). A esos efectos, la revisión judicial comprende tres aspectos: la concesión del remedio apropiado, la revisión de las determinaciones de hecho

---

[5] Apéndice del *Escrito en Cumplimiento de Orden*, págs. 15-16.

conforme al criterio de evidencia sustancial, y la revisión completa de las conclusiones de derecho. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. J.C.A.*, 149 DPR 263, 279-280 (1999).

En cuanto al alcance de la revisión judicial en las determinaciones administrativas, los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. *Pérez López v. Depto. Corrección*, 208 DPR 656 (2022); *DACO v. Toys "R" Us*, 191 DPR 760 (2014). Véase, además, *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821, (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011); *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006); *San Vicente v. Policía de P.R.*, 142 DPR 1 (1996). Esto es así, pues, son las agencias administrativas con la vasta experiencia y el conocimiento especializado para atender los asuntos que se le encomiendan. *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006). Por tal razón, el alcance de la revisión judicial a una determinación final de una agencia administrativa se limitará a "determinar si la agencia actuó arbitraria, ilegal o irrazonablemente en abuso a su discreción". *Pérez López v. Depto. Corrección*, supra, en la pág. 673.

Sobre las determinaciones de hechos, el Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores*, supra, pág. 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999). La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Íd.*, citando a *Pereira Suárez v. Jta.*

*Dir. Cond.*, supra*; Otero v. Toyota,* 163 DPR 716, 728 (2005). Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 437 (1997). Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia. *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 687 (1953).

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003). Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 245 (2007).

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo. *Otero v. Toyota,* supra.

En cambio, las conclusiones de derecho son revisables en todos sus aspectos. *García Reyes v. Cruz Auto corp.,* 173 DPR 870, 894 (2008). De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 DPR 70,

75-76 (2000). Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación. *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

Sin embargo, aun cuando el tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente. *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012); *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007).

Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el tribunal debe abstenerse de intervenir. *Cruz v. Administración*, 164 DPR 341, 357 (2005).

**B.**

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley". Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Al amparo del debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *Román Ortiz v. OGPe*, 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881 (1993); *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562 (1992); *Rivera*

*Santiago v. Secretario de Hacienda de P.R.*, 119 DPR 265 (1987). Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Stowell Taylor*, supra; *López Vives v. Policía de Puerto Rico*, 118 DPR 219 (1987).

Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. *Board of Regents v. Roth*, 408 US 565 (1972); *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274. Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274; *Morissey v. Brewer*, 408 US 471, 481 (1982). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. Véase: *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274.

La jurisprudencia ha establecido diversos requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado y (7) que la decisión se base en el récord. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Stowell Taylor*, supra.

En el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma

expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010). **Sin embargo, se ha reiterado que el procedimiento adjudicativo administrativo debe de ser justo en todas sus etapas y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate.** *Álamo Romero v. Adm. de Corrección*, supra, pág. 330; *López Vives v. Policía de P.R.*, supra, pág. 231.

## C.

En el Reglamento para fomentar la Integración Familiar y Social en la Población Correccional, Reglamento Núm. 9017, Departamento de Estado, 16 de mayo de 2018, se reconoce que:

> "La inclusión de la familia en el proceso de rehabilitación se debe mirar desde la perspectiva de refuerzo positivo, con el fin de lograr un mejor comportamiento, disminuyendo el efecto de separación creado por la sentencia a cumplir. El efecto de la separación crea graves efectos psicológicos tanto en el miembro de la población correccional como en su núcleo familiar, es por esto que distinguimos que, para una modificación de conducta y mejor sociedad, la familia es esencial como su grupo primario de apoyo en el desarrollo de modificación de conducta. La inclusión de la familia es el refuerzo positivo que facilitaremos al miembro de la población correccional, con el fin de mejorar su comportamiento y mejorar su integración social y emocional". Artículo II del Reglamento Núm. 9017, *supra*.

Conforme a su declaración de propósito, la familia es el principal elemento a considerar para que el privilegio de visitas cumpla su misión rehabilitadora en el miembro de la población correccional. *Íd*. Ahora bien, el propio estatuto dispone que:

> "La concesión de visitas a los familiares y relacionados es un privilegio que otorgan las instituciones correccionales, no fundamentadas por exigencia legal alguna, por lo que se pueden restringir, regular o cancelar, según se entienda necesario por las circunstancias prevalecientes en cada institución". Artículo XXIV del Reglamento Núm. 9017, *supra*.

En lo pertinente al caso ante nuestra consideración, el Reglamento Núm. 9017, *supra*, establece las normas de visita a ser observadas por el público que visite las facilidades del Departamento de Corrección y Rehabilitación. Entre estas, se establecen las prohibiciones y responsabilidades del visitante al entrar a las instalaciones.

Los incisos 1 y 2 del Artículo XXV disponen que "[c]ualquier acto o intento de violentar las normas de visita aquí establecidas, resultará en una acción disciplinaria contra el miembro de la población correccional, **a tenor con el Reglamento Disciplinario para la Población Correccional".** (énfasis suplido). Disponen, además, que dicha acción "[p]odrá incluir la cancelación de la visita de la persona involucrada en la situación contraria a las normas".

Cónsono, el inciso (2) del Artículo XXII del Reglamento Núm. 9017, *supra*, dispone que "[s]e prohibirá permanente la entrada a toda institución correccional al visitante, suplidor o contratista que intente introducir cualquier tipo de contrabando dentro de las instituciones correccionales".

**III**

En esencia, en su recurso de *Revisión*, el Sr. Olmeda Pérez señala que erró el Departamento de Corrección y Rehabilitación al denegar la *Solicitud de Remedio Administrativo* Núm. Q-632-23, mediante la cual solicitó que se incluyera nuevamente a sus padres, los Sres. Carmelo Olmeda Viruet y Mariluz Pérez Álvarez, y a la madre de su hija, la Sra. Nicole Alicea Escalera, en la lista de visitantes autorizados de su expediente de visita. Alega que estos fueron removidos de la lista sin que se llevara a cabo un proceso en su contra o la de ellos en violación al derecho a un debido proceso ley.

En su *Escrito en Cumplimiento de Orden*, el Procurador General se allana a la solicitud del Sr. Olmeda Pérez. Al respecto, expresa lo siguiente:

> "En el presente caso, al recurrente se le **denegó permanentemente** las visitas de sus familiares, a saber, sus padres y la madre de su hija, porque se le ocupó un celular **a otro** confinado que contenía fotos y comunicaciones del recurrente con sus padres y su pareja. Sobre estos hechos, no se inició un procedimiento disciplinario contra el recurrente. *A la luz de los hechos particulares de este caso*, entendemos que debe permitírsele al recurrente recibir las visitas de sus familiares y pareja". (énfasis en el original).

Examinado el expediente del caso, encontramos que, el 29 de marzo de 2021, notificada al Sr. Olmeda Pérez el 6 de abril de 2021, la Oficina de Programas y Servicios, Región Sur, del Departamento de Corrección y Rehabilitación emitió una determinación de cancelación de visita permanente a los Sres. Carmelo Olmeda Viruet y Mariluz Pérez Álvarez y la Sra. Nicole Alicea Escalera. En lo pertinente, en el dictamen se dispuso lo siguiente:

> "[…]
> Al evaluar los documentos, sometidos ante nuestra atención determinamos *Denegar Permanentemente* la visita de la señora Pérez Álvarez, el señor Olmeda Viruet y la señora Alicea Escalera a cualquiera de las instituciones penales del país.
>
> Para el 15 de mayo de 2020 se le ocupó al confinado Jean C. Rodríguez Quiñónez quien labora en el área de la cocina <u>un celular marca Unihertz color azul y negro con batería y chip</u>. Al verificar el contenido del celular toda la información encontrada pertenece al confinado en Nathanael Olmeda Pérez. La información encontrada fueron fotos, videos de la institución, foto video de comunicación de la familia (madre, padre, hija y pareja), mensajes de textos. Toda la Información coloca en riesgo, la seguridad institucional.
>
> Se procede a llamar a la Policía de Puerto Rico de Guayana Presentándose el agente Cardona con numero de placa 31351 para la querella correspondiente.
> […]."(énfasis en el original).

Según expusimos, el Reglamento Núm. 9017, *supra,* establece que "[c]ualquier acto o intento de violentar las normas de visita […], resultará en una acción disciplinaria contra el miembro de la población correccional, a tenor con el Reglamento Disciplinario para

la Población Correccional", lo cual "[p]odrá incluir la cancelación de la visita de la persona involucrada en la situación contraria a las normas". Incisos 1 y 2 del Artículo XXV del Reglamento Núm. 9017, *supra.*

Evaluados los argumentos expuestos por el recurrente en su recurso a la luz del derecho expuesto, determinamos que tiene méritos su reclamo. En el presente caso, el Departamento de Corrección y Rehabilitación canceló permanente el privilegio de visita de los familiares en cuestión por alegada violación a las normas de visita. Entendemos que la cancelación se impuso como una medida disciplinaria en contra del Sr. Olmeda Pérez. Sin embargo, no surge que por los alegados hechos que dieron lugar a la imposición de dicha medida disciplinaria se haya llevado a cabo el correspondiente procedimiento disciplinario en su contra en violación a su derecho a un debido proceso de ley.

A pesar de que reconocemos que los dictámenes de los organismos administrativos merecen nuestra mayor deferencia, en este caso la determinación de la agencia de cancelar las visitas de los familiares de la parte recurrente de forma permanente, no se sustenta del expediente administrativo. La imposición de esta medida resulta irrazonable ante la ausencia de un procedimiento disciplinario previo en contra del Sr. Olmeda Pérez.

Por lo tanto, determinamos que procede que la Oficina de Remedios Administrativos del Departamento de Corrección y Rehabilitación reevalúe el caso del Sr. Olmeda Pérez a la luz del marco procesal y legal anteriormente esbozado.

**IV**

Por los fundamentos expuestos, se revoca la determinación recurrida y se devuelve el caso a la Oficina de Remedios Administrativos del Departamento de Corrección y Rehabilitación

para que reevalúe la solicitud de remedio presentada por el Sr. Olmeda Pérez cónsono con lo aquí dispuesto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones